## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**IDA ORTEGA,**

       Plaintiff,

vs.                             Civ. No. 04-788 ACT

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

       Defendant.

### MEMORANDUM OPINION AND ORDER

     **THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Agency Decision filed November 17, 2004.  Docket No. 11.  The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion is well taken and will be granted.

### I.  PROCEDURAL RECORD

     Plaintiff, Ida Ortega, applied for Supplemental Security disability insurance benefits on April 10, 2000.  Plaintiff alleged she became disabled on February 14, 1998 due to musculoskeletal problems.  Tr. 53, 62-64.  Her date last insured is December 31, 1998, so Plaintiff must show that her disability began between February 14, 1998 and December 31, 1998.  The application was denied at the initial and reconsideration level.  The ALJ conducted a hearing on August 15, 2001.  At the hearing, Plaintiff was represented by counsel.  On April 12, 2004, the ALJ issued his decision and found that Plaintiff's musculoskeletal impairment was "severe" but that Plaintiff was not disabled.

1

Tr. 24-25.  Thereafter, Plaintiff filed a request for review.  On June 18, 2004 the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ.  Tr. 4.  Plaintiff subsequently filed her Complaint for court review of the ALJ's decision on July 12, 2004.

Plaintiff was born on August 25, 1952.  Tr. 62.  She has a high school education and past relevant work experience as a teacher's aide and nursing assistant.  Tr. 23.

## II.  STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards.  See Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992); Glenn v. Shalala, 21 F.3d 983 (10th Cir. 1994).  To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a mere scintilla, but it need not be a preponderance.  Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992); Sisco v. United States Dep't. of Health & Human Servs., 10 F.3d 739, 741 (1993).  A decision of an ALJ is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision.  See Gossett v. Bowen, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits, a clamant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  See 42 U.S.C. §423(d)(1)(A); see also Thompson, 987 F.2d at 1486.  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing

disability applications.  20 C.F.R. § 404.1520(a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  See Thompson, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past.  20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience.  Id.

### III.  MEDICAL HISTORY

Plaintiff injured her back while working as a nursing assistant on October 30, 1996.  While pushing a patient in a wheelchair she leaned forward to prevent the patient from falling out of a wheelchair.  She felt immediate back pain radiating to the left lower extremity.  Tr. 137.  She had surgery consisting of a bilateral laminectomy, fusion and diskectomy at L4, L5 and S1 on June 30, 1998.  Id.

The earliest medical report in the record is from October 14, 1999.  Plaintiff went to see Albert F. Peterman, M.D., a neurologist, to obtain an impairment rating for her workmen's compensation claim.  Tr. 138-39.  He found that she had "clear cut evidence of left lumbar L5 and S1 radiculopathy."  Id.  He gave her a "10% whole person impairment."  Tr. 139.

The next record of Plaintiff going to a physician is on May 26, 2000.  She saw U. Chitaley, M.D. of the Gutierrez Medical Group.  Tr. 156-57.  The physician's report states that she came in

3

for an evaluation.  "She reportedly has been disabled certified in Nevada and wants to apply for disability benefits in New Mexico."  Tr. 156.  Dr. Chitaley referred her to a neurologist, Mark Berger, M.D., "for disability evaluation and for the management."  Tr. 157.  There is no record of Plaintiff seeing Dr. Berger.  Moreover, Plaintiff did not return to the Gutierrez Medical Group until June 11, 2001, more than a year later.

Plaintiff saw Rick J. Gehlert, M.D. on June 12, 2000.  A report of his evaluation was sent to an individual at "Cibola County ISD."  Tr. 145.  Again, this examination appears to be not for treatment but rather for disability purposes.  Dr. Gehlert found that her "complaints [were] grossly out of proportion to physical findings."  Id.  He concluded that she was "capable of light duty work provided she doesn't have to lift over 20 lbs. and doesn't have to squat or stoop."  Id.

The next medical records are from the New Mexico Spine group dated November of 2000 to April of 2001.  Tr. 159-60, 169-180.  On November 17, 2000, Claude D. Gelinas, M.D., examined Plaintiff and obtained x-rays which showed only the "instrumented fusion from L4 to S1."  Tr. 159-60.  His impression was "status post L4-S1 fusion, failed back syndrome, possible residual radiculopathy."  Tr. 160.  He ordered an MRI which was performed on January 26, 2001.  Tr. 181.  The MRI was essentially normal.  When Plaintiff returned to Dr. Gelinas in February 20, 2001, he wrote the MRI scan showed "essentially fusion from 4 to 1 and no significant neurologic compression" and thus could not explain her symptoms.  Tr. 180.  He referred her for electrodiagnostic testing.  This testing, performed by Richard T. Radecki, M.D. on March 16, 2001, showed "no signs of radiculopathy, neuropathy, or plexopathy..."  Tr. 174.  Dr. Gelinas ordered further x-rays which showed "no evidence of any significant degenerative process or instability in her neck."  Tr. 171.  Dr. Gelinas opined that Plaintiff had a "failed back syndrome" and referred her to

a psychiatrist.   Tr. 171.   There is no evidence in the record that Plaintiff followed this recommendation.

On June 10, 2001, Plaintiff went back to Gutierrez Medical Group and saw Vinu Alexander, M.D.  He found bilateral muscle spasms but reserved his diagnosis until he obtained the MRI report.  Tr. 165-66.  On July 2, 2001, he found that "patient may be exaggerating her pain which may have a psychological component."  Tr. 163.  He asked the Plaintiff to "make all the effect so that we may be able to get the MRI" so he could refer her for physical therapy.  Tr. 163.  He asked her to return in four weeks.  Again, the record does not show that she returned.  William Schimberg, D.O., performed a consultative examination on April 26, 2002.  Tr. 182-85.  His report initially notes Plaintiff's subjective limitations.  His findings on physical exam were essentially normal.  The only limitation noted is that Plaintiff has "decreased grip strength in the left hand," decreased sensation on the left side, and "unable to use fine motor control with the left hand."  Tr. 183.

On July 17, 2002, Plaintiff went to Donald A. Vichick, M.D. for a disability evaluation.  Tr. 185-87.  Dr. Vichick concluded that Plaintiff had persistent low back pain which he "strongly suspect[s]" was a result of sensory and motor deficits.  Tr. 187.  He further stated that he could not "rule out at least some degree of symptom magnification."  Id.  He found that Plaintiff was unemployable, although "appropriate medical/surgical/rehabilitative treatment would generally enhance [Plaintiff's] chances of returning to at least the sedentary level of employment."  Id.

## IV. DISCUSSION

Plaintiff alleges that the ALJ failed to make a proper residual functional capacity ("RFC") finding and the ALJ denied Plaintiff due process of law by limiting the cross-examination of the

vocational expert.

    Residual functional capacity.

    The determination of a claimant's RFC is the extent to which the claimant's impairments and related symptoms affect her capacity to do work-related activities.  Social Security Ruling ("SSR") 96-5p (1996 WL 374183); SSR 96-8p (1995 WL 374184).  An evaluation of an RFC is a decision of what a Plaintiff can do despite her limitations.  20 C.F.R. §§404.1545(a), 416.945(a).  The ALJ determines an individual's RFC based on all the evidence.  20 C.F.R. § 404.1546.

    In assessing Plaintiff's RFC, the ALJ relied on the opinions of  Dr. Peterman, Dr. Gehlert and the reviewing physicians' opinions.  However, these opinions do not support the ALJ's RFC. In relying on Dr. Peterman the ALJ wrote that  "Dr. Peterman assessed Ms. Ortega's impairment at 10 percent of the whole person, contrary to a finding of total disability."  Tr. 22.  The Court agrees with Defendant that it is a reasonable inference that a 10 percent impairment does not support a finding of total disability.  However, the ALJ did not mention or discuss that this rating was a worker's compensation rating and his decision needs to note the differences between this rating and the social security regulations.  See Baca v. Shalala, 907 F. Supp. 351 (D.N.M. 1995); Booth v. Barnhart, 181 F. Supp. 2d 1099 (C.D. Cal 2002).

    In this matter, the ALJ determined that Plaintiff had an RFC for a range of light work that does not require more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling and jobs that will not expose her to temperature extremes.  Tr. 24.  Light work requires standing or walking for six hours out of an eight hour workday, lifting no more than twenty pounds at a time, and frequent carrying of objects weighing up to ten pounds at a time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

At the end of the administrative hearing, the ALJ said: "When I get that in I may order a consultative exam, I'm not sure yet...And I couldn't find any reasoning any of these reports for her back pain."  Tr. 208.  He concluded the hearing by saying "Get that in and then if I feel it's necessary I may order a consultative exam."  "I'm not satisfied I've got enough information to make a good decision..."  Tr. 209.  The report he was waiting for was a bone scan that was never made part of the record.

The ALJ ordered a consultative examination which was done by William Schimberg, D.O. on April 26, 2002.  The ALJ did not adopt the findings and limitations of Dr. Schimberg because the ALJ found that Dr. Schimberg's report did "not provide a diagnosis of a medically determinable impairment that might cause these abnormalities."  Tr. 18.  Plaintiff asserts that the ALJ should have recontacted Dr. Schimberg.

The regulations state that:

"If the report is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and          ask that the medical source furnish the missing information or prepare a revised report."
20 C.F.R. § 404.1519p(b).

Thus, the ALJ must recontact a physician when the information the doctor provides is "inadequate...to determine whether you [the claimant] are disabled."  20 C.F.R. § 416.912(e).  It is the inadequacy of the evidence that triggers this duty.  White v. Joanne B. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

The ALJ also relied on Dr. Gehlert's conclusion that the Plaintiff "was certainly capable of any light duty work provided she doesn't have to lift over 20 lbs. and doesn't have to squat or stoop."  Tr. 22.  However, the ALJ stated in his RFC finding that Plaintiff was able to perform jobs that require occasional stooping.  Tr. 24.

7

Finally, the ALJ relied on the agency's reviewing physicians report which found that Plaintiff had the RFC for a limited range of light work.  Tr. 22, 146-53.  However, this form, signed by two physicians, is not substantial evidence because it is not accompanied by a thorough written report or persuasive testimony.  Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987).  The Court would also note that the ALJ rejected the medical opinion of Dr. Vichick that Plaintiff was unemployable because he felt it was based on subjective complaints and he found Plaintiff not credible.  Tr. 20.

The Court agrees with the ALJ that in assessing Plaintiff's RFC he needed a consultative evaluation. The medical evidence in the record was not sufficient. SSR 96-8p, 1996 WL 374184, *5 (July 2, 1996) (noting that ALJ's "must...make every reasonable effort to ensure that the file contains sufficient evidence to assess the RFC"); Billups v. Jo Anne B. Barnhart, 322 F. Supp. 2d 1220 (D. Kan. 2004).  When the report regarding the consultative examination was incomplete, the ALJ should have recontacted the physician.  Thus, the ALJ's RFC finding is not supported by substantial evidence and the ALJ did not apply correct legal standards.

Due to this error, this matter must be remanded for further proceedings.  Because the matter is remanded for a proper RFC assessment, the Court does not reach Plaintiff's second alleged error.  However on remand, the Court directs that if the ALJ holds an administrative hearing, the ALJ should permit the Plaintiff to cross-examine the vocational expert if a vocational expert testifies.

Finally, the Court declines to order that this matter be heard by a different ALJ.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Decision is granted for proceedings consistent with this memorandum

opinion and order.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE,**
**PRESIDING**